IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WEBSTERS CHALK PAINT         )
POWDER, LLC,                 )
                             )       CIVIL ACTION FILE
        Plaintiff,           )       NO.:  1:13-CV-2040-WSD
                             )
v.                           )
                             )       Judge William S. Duffey, Jr.
ANNIE SLOAN INTERIORS, LTD., )
JOLIE DESIGN & DÉCOR, INC.   )
d/b/a ANNIE SLOAN UNFOLDED,  )
LISA RICKERT, and CHALK IT UP )
NORCROSS, LLC,               )
                             )
        Defendants.          )

## REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Annie Sloan Interiors, Ltd. ("ASI"), Jolie Design & Décor, Inc. d/b/a Annie

Sloan Unfolded ("JDD"), Lisa Rickert ("Ms. Rickert"), and Chalk It Up Norcross,

LLC ("Norcross") (collectively referred to herein as "Defendants") respectfully

submit this Reply in support of their motion to dismiss the amended complaint of

Websters Chalk Paint Powder, LLC ("Websters").   To the extent Websters'

Response to Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Rec.

Doc. 22) ("Websters' Response") merely restates the conclusory allegations of the

amended complaint, further response by Defendants here would be unnecessarily

duplicative of the factual and legal arguments outlined for the Court in Defendants'
memorandum accompanying their motion to dismiss (Rec. Doc. 21-1). Instead,
through this Reply, Defendants address certain mischaracterizations and
misstatements made in Webster's Response.

1.    **"Annie Sloan Unfolded"**

Despite all evidence to the contrary, Websters mulishly clings to the
irrational (and pointless) notion that Ms. Rickert is doing business personally as
"Annie Sloan Unfolded." With no objective support in sight, Websters attempts to
force Ms. Rickert into the legal conundrum of proving a "negative." Explained
simply, Lisa Rickert is the President and Chief Executive Officer of JDD. Rec.
Doc. 21-3. JDD does business as Annie Sloan Unfolded. *Id.* As a Louisiana
corporation, JDD is not required to file anything to do business under an assumed
name. *MAS Nursing, Inc. v. Burke*, 523 So. 2d 909, 912 (La. Ct. App. 1988) writ
denied, 530 So. 2d 570 (La. 1988) (noting that La. Rev. Stat. § 51:281 only
prohibits a person—not a corporation—from transacting business under an
assumed name unless he registers the name in the parish or parishes where he
intends to conduct business); *see also National Oil Works v. Korn Bros.*, 114 So.
659, 661 (La. 1927) ("We know of no law in this state prohibiting a corporation
from transacting business or contracting under an assumed or trade name.").

Without a legal obligation to do so, out of an abundance of caution, JDD properly filed an Affidavit of Assumed Name for "Annie Sloan Unfolded" with the Register of Conveyances in the City of New Orleans. *See* La. Rev. Stat. § 51:281. This filing was accomplished in April of 2012, long before "commencement of the instant proceedings," as Websters suggests. (*See* Rec. Doc. 22 at p. 4)  Websters incorrectly cites La. Rev. State. § 51:213 (Louisiana's trademark statute) and *Pro Source Roofing, Inc. v. Boucher*, 822 So. 2d 881, 884 (La. App. 2 Cir. 2002) for the proposition that JDD needed to file a document with the Louisiana Secretary of State in order for JDD's assumed name to be effective. (Rec. Doc. 22 at pp. 4-6)

Websters' Response devotes almost four full pages to this non-issue and appears to be obsessed with arguing simply for argument's sake.  To be clear, counsel for JDD discussed the Affidavit of Assumed Name, and the propriety of such filing, with counsel for Websters before the Amended Complaint was filed. *See* Exhibit A (attached herein with Declaration of Jonathan D. Goins in Support of Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint).  It is therefore that much more troubling that Websters misstates the law, after being educated on the point.  If nothing else, this section of Websters' Response is illustrative of the cavalier attitude with which Websters

proceeds before the Court, making an award of Defendants' attorneys' fees incurred in obtaining dismissal of the Amended Complaint appropriate.

2.     **ASI's Lack of Contacts with Georgia**

With respect to personal jurisdiction over ASI, Websters points to a single instance of Annie Sloan's personal appearance in Georgia as evidence that ASI has somehow "transacted business" in the state for purposes of Georgia's long-arm statute. (*See* Rec. Doc. 22 at pp. 6-8)  Defendants admit that Annie Sloan once conducted a workshop in Georgia, but deny that ASI has ever entered the state of Georgia.  Ms. Sloan visited Georgia in her personal capacity as a world-renowned author and artist at the request and expense of JDD, not as a representative of ASI. (Rickert Dec. at ¶3) (attached herein with Declaration of Lisa Rickert in Support of Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint) ASI did not organize, supervise, pay for, or receive compensation for Ms. Sloan's trip to Georgia. *Id.* at ¶4.  And to be sure, a foreign entity is not subject to personal jurisdiction in a forum merely because its representative enters the forum in a personal capacity. *See, e.g., Ace Investors, LLC v. Rubin*, 494 Fed. Appx. 856, 589 (10th Cir. 2012) (holding that "[a] court

must focus on the particular capacity in which a party is being sued in determining whether it has personal jurisdiction").[1]

Moreover, agency law simply does not support Websters' contention that JDD and JDD's retailers are ASI's agents. Websters argues that because ASI has licensed the CHALK PAINT brand to JDD, and because JDD asserts some control over JDD's retailers regarding use of the brand, that JDD and JDD's retailers are the agents of ASI (and that JDD and JDD's retailers have authority to bind ASI, despite a contract expressly stating the opposite). (Rec. Doc. 22 at pp. 7-9) Not surprisingly, Websters cites no authority in support of this legal non-sequitur. It is well-settled that a trademark license does not amount to an agency relationship. *See, e.g., Iragorri v. United Techs. Corp.*, 285 F. Supp. 2d 230, 241 (D. Conn. 2003) (noting that in the context of a trademark licensor/licensee relationship, "[i]n the absence of an agreement to act on behalf of a principal, an agency does not exist, regardless of the degree of control one party exercises over another"). Moreover, "a party that buys goods for resale to a third person is not considered the agent in the transaction unless 'the parties agree that his duty is to act primarily for the benefit of the ones delivering the goods for him.'" *Id.* The fact remains that

---

[1] Even assuming, *arguendo*, that Annie Sloan had visited Georgia on behalf of ASI, teaching a painting workshop and signing books have no relation to the claims asserted against ASI. Therefore, an exercise of specific personal jurisdiction against ASI is inappropriate.

JDD and JDD's retailers have no express or implied authority to bind or take action on behalf of ASI. No amount of legal "hand waving" can change this.

Finally, Websters argues ASI is subject to personal jurisdiction in Georgia because ASI's website has a link to JDD's website, and JDD's website has information about retailers who sell the CHALK PAINT brand, including retailers in Georgia. (Rec. Doc. 22 at p. 8) In doing so, Websters' Response unwittingly concedes that ASI's website is merely "passive" in nature. Absent from Websters' Response is any discussion of the "sliding scale" test used in *Barton Southern Co., Inc. v. Manhole Barrier Sys., Inc.*, to determine whether personal jurisdiction may rest on a defendant's website. 318 F. Supp. 2d 1174, 1177 (N.D. Ga. 2004). Websters' silence on *Barton Southern* is deafening.

### 3. No Tortious Interference

Defendants are unaware of (and Websters' Response does not offer) any legal support for the proposition that simply notifying a social media site of the existence of a federally registered trademark is an interference with business relations.

In fact, at least one court has held that a company is not liable for tortious interference with a contract if the company contacts a third party social media site with a legitimate business concern regarding another company's actions. In *Lown*

*Companies, LLC v. Piggy Paint, LLC,* the defendant, a company that sold "Piggy Paint" nail polish, created a Facebook page to promote its business. 2012 U.S. Dist. LEXIS 111527, *3 (W.D. Mich. Aug. 9, 2012). The plaintiff, a company that sells nail polish under the name "Piggy Polish" (and holds a federally registered trademark for "Piggy Polish") notified Facebook of the defendant's "Piggy Paint" business page because the plaintiff believed "Piggy Paint" was infringing on the "Piggy Polish" trademark. *Id.* at *4. Facebook removed the page based on plaintiff's notification. *Id.* Thereafter, the defendant brought a counterclaim against the plaintiff for intentional interference with business expectancy, and the plaintiff sought to dismiss. *Id.* The court held that "contacting a third party over legitimate business concerns such as a breach of contract or copyright infringement cannot form the basis of a tortious interference claim." *Id.* at * 11. Because the defendant could not show that the plaintiff contacted Facebook out of malice (rather than a desire to protect its own mark), the counterclaim was dismissed. *Id.* at *12.

Although the *Lown* case was decided under Michigan law, the elements of Georgia's tortious interference with contractual relations are similar to those of

Michigan's intentional interference with a business expectancy cause of action,[2] and also require that the party act with malicious intent. *Cf. Quality Foods, Inc. v. Smithberg*, 288 Ga. App. 47, 55-56, 653 S.E.2d 486 (2007) (quoting *Carroll Anesthesia Assocs. v. AnestheCare, Inc.*, 234 Ga. App. 646, 647(1), 507 S.E.2d 829 (1998))("To establish a cause of action for wrongful interference with contractual relations, in addition to demonstrating the existence of a valid contract, a plaintiff must show that the defendant: (1) acted improperly and without privilege; (2) acted purposely and maliciously with the intent to injure; (3) induced a third party not to enter into or to continue a business relationship with the plaintiff; and (4) caused the plaintiff some financial injury."). Thus, here, as in the *Lown* case, the mere act of contacting a third party social media site such as Etsy or Facebook in regards to legitimate business concerns involving infringement of a federally registered trademark cannot support a finding of wrongful interference with contractual relations under Georgia law.

### 4.   Websters' Request for Judgment on the Pleadings?

---

[2] The elements of Michigan's cause of action for interference with a business expectancy are: (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the defendant, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the plaintiff. *Lown Companies, LLC v. Piggy Paint, LLC*, 2012 U.S. Dist. LEXIS 111527, *10.

In the latter half of Websters' Response, Websters pronounces that a "declaratory judgment in favor of Websters is warranted" and appears to ask for temporary injunctive relief as well as an award of attorneys' fees. (Rec. Doc. No. 22 at pp. 16-24) It is not clear to Defendants whether Websters' Response is seeking a judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, temporary injunctive relief (without having properly filed for a TRO or preliminary injunction at the time of filing suit), neither, or both.

Whatever the purpose or motive, Websters' Response cannot be used as a vehicle to seek judgment on the pleadings or injunctive relief. Websters would have to file a separate motion and allow Defendants the opportunity to respond to each issue. *See, e.g.*, N.D. Ga. L.R. 65.1 ("Whenever an attorney seeks an immediate order of the court, the attorney must submit **a motion** to the district judge to whom the case has been assigned . . ..") (emphasis added); FED. R. CIV. P. 65(a)(2) (requiring a "motion" for preliminary injunction); *see also* N.D. Ga. L.R. 7.2B (regarding emergency motions); C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2949 (1973) ("The appropriate procedure for requesting a preliminary injunction is by motion . . .."); *Allens Creek v. Caldera*, 88 F. Supp. 2d 77, 83 (W.D.N.Y. 2000) ("If a party seeks immediate relief, Rule 65 of the Federal Rules of Civil Procedure requires the filing of a motion."). Accordingly, to

4841-5521-1287.1                                                        9

the extent Websters' Response presents arguments in support of the foregoing, such arguments are irrelevant to the motion to dismiss currently pending before the Court.

**5.    Failure to Plausibly Allege Fraud**

Both the Amended Complaint and Websters' Response fail to plausibly allege a single false statement or instance of fraud committed by ASI on the United States Patent and Trademark Office ("USPTO").

It is true ASI filed Application Ser. No. 85022616, which received an initial refusal to register under Section 2(e)(1) of the Lanham Act (descriptiveness). By failing to respond to the initial office action within six months, the application was deemed abandoned. *See* 15 U.S.C. § 1062(b). Of course, ASI's abandonment of Application Ser. No. 85022616 did not prevent ASI from reapplying (now with the benefit of counsel) for registration of the CHALK PAINT mark in Application Ser. Nos. 85408522 (CHALK PAINT logo mark) and 85479014 (CHALK PAINT standard character mark), which matured into Registration Nos. 4322847 and 4232734, respectively. Addi tionally, statements made by the examiner in the abandoned application did not prejudice ASI in the later applications. *See A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 220 (3rd Cir. 2000) (finding that while an "initial PTO determination by an examining attorney may be

considered, it need not be given weight when the PTO attorney did not review all the evidence available to the District Court"). Further, having later received registration of the CHALK PAINT mark in both standard character and stylized form, the examining attorney's initial opinion in Application Ser. No. 85022616 and ASI's abandonment of said application are simply irrelevant. *See Estate of Ellington v. Gibson Piano Ventures, Inc.*, 2005 U.S. Dist. LEXIS 21003 (S.D. Ind. June 24, 2005) (noting that where a trademark examiner later considers more evidence and comes to a different conclusion, "the initial opinion[] of the trademark examiner[] is irrelevant."). In short, ASI's previously abandoned application was not relevant to its later applications, was not a source of fraud before the USPTO, and is of no consequence to this lawsuit.

Websters also points to (1) an abandoned application for registration of the term "CHALK-PAINT" for "marking lines on ground using chalk powder" filed by a non-party in 1990; and (2) use of colored chalk on "crash test dummies" (presumably to indicate location of impact during a simulated crash) as evidence that ASI committed fraud on the USPTO. Rec. Doc. 22 at p. 11. First, these two examples have nothing to do with "decorative paint" or "arts and crafts paint" (the goods for which ASI sought and received registration of the CHALK PAINT mark); and these examples therefore are not relevant to the issue of exclusive use.

4841-5521-1287.1                                   11

*See Unique Sports Prods. v. Ferrari Importing Co.*, 2011 U.S. Dist. LEXIS 124801 (N.D. Ga. Oct. 27, 2011) (noting that the requirement of 'substantial exclusivity' makes allowance for use by others which may be inconsequential or infringing.). Second, and more importantly, even if the goods were identical, Websters impermissibly imputes knowledge of these two uses onto ASI without a shred of evidence in support.    This is precisely the type of guesswork concerning allegations of fraud that FED. R. CIV. P. 8 and 9(b) do not permit.

Websters' Response also mischaracterizes statements made by ASI with respect to the calcium carbonate content of CHALK PAINT in the declaration submitted to the USPTO in support of registration of the CHALK PAINT mark. (Rec. Doc. 22 at p. 11) A full reading of the declaration paragraph partially quoted by Websters illustrates that ASI did not seek to hide or mask the presence of calcium carbonate in CHALK PAINT:

> Although CHALK PAINT decorative paint does contain a small amount of calcium carbonate, Annie Sloan Interiors, Ltd. has never marketed the use of calcium carbonate in our brand of decorative paints or used the word "chalk" as interchangeable with calcium carbonate. ASI has never portrayed the word "chalk" in the CHALK PAINT mark as an indicator of ingredients. Nor is it widely perceived as such by the product's purchasing class. The word "chalk" in the CHALK PAINT mark has nothing to do with calcium carbonate, but rather, was meant to be suggestive of what I perceived to be a velvety matte—or, "chalky"—finish. Also, "CHALK PAINT" is not a term of

art in the industry in which ASI's goods are manufactured, nor does it
identify a geographical place.

*See* Goins Decl., Exhibit B at ¶8 (Decl. of Annie Sloan in connection with
Application Ser. No. 85479014).   Websters may not agree with the trademark
examiner's decision to grant registration of ASI's CHALK PAINT trademark, but
Websters simply cannot argue that ASI committed fraud on the grounds that
Websters thinks the examiner was wrong.   Websters has cried "fraud" without
evidence to support its claim; and the Federal Rules of Civil Procedure do not
permit such behavior.

Finally, Websters claims that "ASI knew that [the CHALK PAINT
trademark] had not been continuously used in commerce in the U.S. for five years"
prior to the date of ASI's application, thereby making ASI's "2(f)" declaration to
that effect in support of registration fraudulent. (Rec. Doc. 22 at pp. 10, 18)   In
support, Websters notes that Application Ser. No. 85408522 (seeking registration
of the CHALK PAINT mark in *stylized form*) lists a "First Use in U.S. commerce"
of that logo as "at least as early as 2010." (*See* Rec Doc. 22-1 at PL-023)   From
there, Websters erroneously concludes that the CHALK PAINT mark (in any
form) has only been used in U.S. commerce since 2010, thereby making ASI's
"five year declaration" of substantially exclusive and continuous use in U.S.

commerce false and fraudulent. (*See* Rec. Doc. 22 at p. 18)  In arriving at this conclusion, however, Websters missed a critical fact:  whereas the CHALK PAINT *logo* was created and first used in U.S. commerce in 2010, the CHALK PAINT *brand* has been sold in U.S. commerce (bearing a standard character label) since at least as early as 2004.   Hence, ASI has *two separate registrations* with *two separate "First Use" dates*.  Websters' apparent misunderstanding of the distinction between a standard character mark and a stylized mark leads it to proclaim that the 2010 "First Use" date in the stylized mark/logo application represents Websters' "most incriminating evidence against ASI in this case" (Rec. Doc. 22 at p. 18) (emphasis in original)).  If this is the most so-called incriminating evidence as against ASI, then surely Websters' claim for fraud fails to state a claim for relief under Rule 12(b)(6).

## CONCLUSION

Based on the foregoing reasons, Defendants respectfully request that this Court grant the pending Motion To Dismiss Plaintiff's Amended Complaint *with prejudice* for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2) as to Defendants ASI and Ms. Rickert, and FED. R. CIV. P. 12(b)(6) as to all named Defendants.

Respectfully submitted,
this 2nd day of December, 2013.

LEWIS BRISBOIS BISGAARD & SMITH, LLP

/s/ Jonathan D. Goins
JONATHAN D. GOINS
Georgia Bar No.: 738593
LERON E. ROGERS
Georgia Bar No.: 482620
1180 Peachtree Street, NE
Suite 2900
Atlanta, Georgia  30309
404.348.8585 (Telephone)
404.467.8845 (Facsimile)
jonathan.goins@lewisbrisbois.com
leron.rogers@lewisbrisbois.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing ***Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint*** with the Clerk of Court using CM/ECF system which will automatically send e-mail notification of such filing to the following counsel of record:

James T. Hollin, Jr., Esq.
JT HOLLIN, ATTORNEY AT LAW, P.C.
110 Habersham Drive
Suite 118
Fayetteville, GA 30214

This 2nd day of December, 2013.

/s/ Jonathan D. Goins
JONATHAN D. GOINS
Georgia Bar No.: 738593
LERON E. ROGERS
Georgia Bar No.: 482620

LEWIS BRISBOIS BISGAARD & SMITH, LLP    Counsel for Defendants
1180 Peachtree Street, NE
Suite 2900
Atlanta, Georgia  30309
404.348.8585 (Telephone)
404.467.8845 (Facsimile)
jonathan.goins@lewisbrisbois.com
leron.rogers@lewisbrisbois.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

/s/ Jonathan D. Goins
JONATHAN D. GOINS
Georgia Bar No.: 738593
LERON E. ROGERS
Georgia Bar No.: 482620
Counsel for Defendants

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
1180 Peachtree Street, NE
Suite 2900
Atlanta, Georgia  30309
404.348.8585 (Telephone)
404.467.8845 (Facsimile)
jonathan.goins@lewisbrisbois.com
leron.rogers@lewisbrisbois.com

4841-5521-1287.1