IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **WEBSTERS CHALK PAINT POWDER, LLC,**<br><br>       **Plaintiff,**<br><br>     **v.**<br><br>**ANNIE SLOAN INTERIORS, LTD., et al.,**<br><br>       **Defendants.** | **1:13-cv-2040-WSD** |

## OPINION AND ORDER

This matter is before the Court on the Defendants' Motion to Dismiss Plaintiff Websters Chalk Paint Powder, LLC's ("Plaintiff") Complaint for lack of personal jurisdiction over Defendant Lisa Rickert ("Rickert") and Defendant Annie Sloan Interiors Limited ("ASI"), and for failure to state a claim against all Defendants [21], and on Plaintiff's Motion to Strike the Defendants' Reply as untimely [24].

## I.   BACKGROUND

### A.   Facts

Plaintiff is a limited liability company based in Georgia that manufactures, distributes, and sells a "specially-formulated powder," or a paint additive, that can

be mixed with other paints.  Am. Compl. at 2.  Defendant ASI is a foreign corporation organized under the laws of the United Kingdom with its principal place of business in Oxford, United Kingdom.  ASI manufactures decorative paint, and sells its products to an exclusive distributor in the United States.  ASI is the owner and licensor of the registered trademarks "ANNIE SLOAN®" and "CHALK PAINT®."  The decorative paints marketed and sold under the "CHALK PAINT®" brand are specifically designed for furniture, but they can also be used on walls, floors, and in paintings.

Defendant Jolie Design & Décor, Inc. ("JDD") is a corporation organized under the laws of Louisiana with its principal place of business in New Orleans, Louisiana.  Defendant Annie Sloan Unfolded ("ASU") is the assumed corporate name of JDD.  JDD is the exclusive licensee and distributor of ANNIE SLOAN®" products and the "CHALK PAINT®" brand in the United States.  JDD sublicenses the use of "CHALK PAINT®" and "ANNIE SLOAN®" to retail sellers in the United States.

Defendant Rickert is a Louisiana citizen.  Rickert is a founder of JDD and serves as one of its corporate officers.  Defendant Chalk It Up Norcross, LLC ("CIUN") is a limited liability company based in Norcross, Georgia.  CIUN is a retailer that sells the "CHALK PAINT®" brand of decorative paint, and other

"ANNIE SLOAN®" products, as a sub-licensee of JDD.

Plaintiff alleges that it is the owner of a common-law trademark entitled "WEBSTERS CHALK PAINT POWDER."  In 2010 and 2011, Annie Sloan, the founder of Defendant ASI, filed a trademark application with the United States Patent and Trademark Office ("USPTO") to register the "CHALK PAINT®" brand.  The USPTO initially denied these applications as "merely descriptive," requesting ASI to provide additional information regarding whether the term "CHALK PAINT®" had a particular meaning in the industry or whether it was considered a term of art within the industry.  On June 26, 2012, ASI responded to the USPTO's requests for additional information, and stated:

> Although CHALK PAINT decorative paint does contain a small amount of calcium carbonate, [ASI] has never marketed the use of calcium carbonate in our brand of decorative paints or used the word "chalk" as interchangeable with calcium carbonate.  ASI has never portrayed the word "chalk" in the CHALK PAINT mark as an indicator of ingredients.  Nor is it widely perceived as such by the product's purchasing class.  The word "chalk" in the CHALK PAINT mark has nothing to do with calcium carbonate, but rather, was meant to be suggestive of what I perceived to be a velvety matte-or, "chalky"—finish.  Also, "CHALK PAINT" is not a term of art in the industry in which ASI's goods are manufactured, nor does it identify a geographical place . . . ASI's use in commerce of the CHALK PAINT mark has been substantially exclusive and continuous [for] at least five years immediately preceding the date of application for federal registration.

On October 30, 2012, the USPTO granted ASI's application, No. 4232734,

to register the "CHALK PAINT®" mark, and subsequently in the same year,

granted ASI's application, No. 4322847, for a stylized version of the "CHALK

PAINT®" mark.

On July 5, 2012, Plaintiff submitted a trademark application to the USPTO

to register "WEBSTERS CHALK PAINT POWDER," and requested the USPTO

to cancel ASI's registration for the "CHALK PAINT®" mark.  ASI opposed

Plaintiff's application.  To date, the USPTO has not acted on Plaintiff's

application.  A comparison of Plaintiff's logo and ASI's logo, containing the

"CHALK PAINT®" mark is illustrated below:



On May 14, 2012, Debbie Hayes, the brand compliance manager of ASU,

sent a letter to Plaintiff stating that ASI was the owner of the "CHALK PAINT®"

mark, and that Plaintiff's use of ASI's trademark in its circular logo, and to market

and sell its products, violated federal and international trademark laws.  On June 8,

2012, ASI's counsel sent Plaintiff a letter demanding that Plaintiff cease use of the

"CHALK PAINT®" mark in connection with the sale of its products.  On

June 22, 2012, Plaintiff's counsel wrote a letter to ASI's counsel, and stated that

"CHALK PAINT®" had not acquired distinctiveness in the home decorating

industry, and that Plaintiff's continued use of the term to market its product did not

pose a risk of confusion with ASI's registered trademark.

At some point after these communications with Plaintiff, ASI notified Etsy,

an online marketplace for arts and crafts, that Plaintiff's online storefront on Etsy's

website violated ASI's trademark rights.  Etsy investigated ASI's claim,

determined that Plaintiff's online storefront violated Etsy's Copyright and

Intellectual Property policy, and removed a portion of Plaintiff's online content

from its website.  ASI also informed Facebook that Plaintiff's business page

violated ASI's trademark rights in the "CHALK PAINT®" brand.  Facebook also

investigated ASI's claim, and removed Plaintiff's business page because it

determined that Plaintiff's business page violated Facebook's Statement of Rights

and Responsibilities.

B.   Procedural History

On October 18, 2013, Plaintiff filed a six (6) count Amended Complaint[1]

against the Defendants seeking (i) a declaration that "CHALK PAINT®" is an

invalid and unenforceable trademark because it is a generic term that is merely

descriptive of the product's ingredients or the general class of goods sold in the

paint industry, (ii) cancellation of the "CHALK PAINT®" trademark under

15 U.S.C. § 1064(3) because of Defendants' alleged fraudulent representations in

ASI's trademark applications, (iii) for damages under 15 U.S.C. §1120 as a result

of ASI's alleged fraudulent representations in the trademark applications, (iv) for

damages under 15 U.S.C. § 1125(a) for the infringement of Plaintiff's claimed

right to the common law trademark "WEBSTERS CHALK PAINT POWDER,"

---

[1] Plaintiff filed its original Complaint on June 18, 2013.  The original Complaint
named only ASI as a Defendant in this action.  On September 10, 2013, the
Defendants moved to dismiss the original Complaint for lack of personal
jurisdiction over ASI, and for failure to state a claim upon which relief can be
granted.  On October 1, 2013, Plaintiff filed its Response to the Motion to Dismiss,
and moved to amend its Complaint to add claims against Rickert, JDD, ASU and
CIUN.  On October 17, 2013, the parties filed a stipulated Consent Motion that
allowed Plaintiff to amend its Complaint, and extended the time for Defendants to
respond to the Amended Complaint.  On October 18, 2013, the Court entered an
Order granting the stipulated Consent Motion to Amend the Complaint and extend
the deadline to file a response to the Amended Complaint.  The Court's
October 18, 2013, Order, required Plaintiff to file an Amended Complaint, on or
before October 18, 2013, and required the Defendants to respond to the Amended
Complaint, on or before October 31, 2013.

(v) for damages for tortious interference with business relations under Georgia law, and (vi) for damages under O.C.G.A. § 10-1372(a) for deceptive trade practices and disparagement of Plaintiff's goods.

On October 31, 2013, the Defendants moved to dismiss the Amended Complaint.  The Defendants argue that the claims against Defendants Rickert and ASI should be dismissed for lack of personal jurisdiction.  The Defendants also argue that the Amended Complaint should be dismissed because it fails to state a claim upon which relief can be granted.

On December 3, 2013, Plaintiff moved to strike Defendants' Reply to Plaintiff's Response to the Motion to Dismiss for failure to file a reply within fourteen (14) days after service of the responsive pleading as required by Local Rule 7.1(C).

## II.   DISCUSSION

### A.   Personal Jurisdiction over Rickert and ASI

#### 1.   *Legal Standard*

A plaintiff must allege sufficient facts in its complaint to make out a *prima facie* case of personal jurisdiction over a defendant. Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257-58 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274

(11th Cir. 2009)).  If the plaintiff makes its *prima facie* showing of personal jurisdiction, the defendant may challenge the allegations of jurisdiction with evidence.  See id.  Upon the defendant's submission of jurisdictional evidence, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction."  Id. (quoting United Techs., 556 F.3d at 1274); accord Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002).  Where there are conflicts between the evidence, the court makes all reasonable inferences in favor of the plaintiff. Diamond Crystal, 593 F.3d at 1257 (quoting Meier, 288 F.3d at 1269); Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988).

A district court has personal jurisdiction over a nonresident defendant if the exercise of jurisdiction (1) is permitted under the state's long-arm statute and (2) does not violate the Due Process Clause of the Fourteenth Amendment.  Diamond Crystal, 593 F.3d at 1257-58.  In Georgia, the two inquiries are distinct because the Georgia long-arm statute imposes obligations that a plaintiff must establish that are independent of procedural due process requirements.  Id. at 1259.  To satisfy the Georgia long-arm statute, the plaintiff must establish that jurisdiction is permitted under an express statutory provision, interpreted and applied literally.  Id. at 1259 & n.10 (construing Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, 620 S.E.2d 352 (Ga. 2005)).

8

To satisfy the constitutional requirement, the defendant must have "fair warning" of litigation in Georgia by establishing "minimum contacts" with the state.  Id. at 1267.  If such "minimum contacts" are shown, the defendant can escape the exercise of personal jurisdiction over it only by making "a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice."  Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

i.     Long-Arm Statute

Georgia's long-arm statute confers personal jurisdiction over non-resident defendants under six circumstances.  See Ga. Code Ann. § 9-10-91.  Plaintiff asserts that Defendants are subject to jurisdiction under the first of these, which provides jurisdiction over a defendant who "[t]ransacts any business within" Georgia.  O.C.G.A. § 90-10-91(1).  This section requires that the defendant have "purposefully done some act or consummated some transaction" in Georgia. Diamond Crystal, 593 F.3d at 1260 (quoting Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 736–37 9 (Ga. Ct. App. 2006)).  The defendant's physical presence in the state to perform the act is not required.  Id. at 1264.

A nonresident defendant's "mail, telephone calls, and other 'intangible acts'" that occur outside of Georgia must be examined to determine "whether it can

9

fairly be said that the nonresident has transacted any business within Georgia."  Id. The defendant, however, must "fairly be said" to have literally "transacted" business in Georgia.  Id.; see also id. at 1264 n.18 ("'Transact' means 'to prosecute negotiations,' to 'carry on business,' 'to carry out,' or 'to carry on.'" (quoting Webster's Third New Int'l Dictionary, 2425 (1993)).  That is, the defendant must have engaged in conduct directed to Georgia and which occurs in Georgia.  See id.

ii.   Due Process

To satisfy the constitutional requirements for the exercise of personal jurisdiction, a defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Diamond Crystal, 593 F.3d at 1267 (quoting Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414 (1984) and Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  A nonresident defendant is subject to personal jurisdiction in a state only when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  Burger King, 471 U.S. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

"Due process contemplates two types of jurisdiction over the person: general and specific jurisdiction."  Paul, Hastings, Janofsky & Walker, LLP v. City of

Tulsa, Okla., 245 F. Supp. 2d 1248, 1253 (N.D. Ga. 2002) (*citing* Helicopteros,

466 U.S. at 414-15).  For general jurisdiction to apply, a nonresident defendant's

"contacts with the forum that are unrelated to the litigation must be substantial," in

the nature of "continuous and systematic general business contacts between the

defendant and the forum state."  Meier, 288 F.3d at 1274.  Specific jurisdiction is

present when the defendant's contacts with the forum state "satisfy three criteria:

they must be related to the plaintiff's cause of action or have given rise to it; they

must involve some act by which the defendant purposefully avails itself of the

privilege of conducting activities within the forum; and they must be such that the

defendant should reasonably anticipate being haled into court there."

Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 925 (11th Cir. 2007).

Jurisdiction must also comport with "traditional notions of fair play and

substantial justice," which requires consideration of: "(a) the burden on the

defendant, (b) the forum State's interest in adjudicating the dispute, (c) the

plaintiff's interest in obtaining convenient and effective relief, (d) the interstate

justice system's interest in obtaining the most efficient resolution of controversies,

and (e) the shared interest of the several States in furthering fundamental

substantive social policies."  Meier, 288 F.3d at 1276 (citing Burger King,

471 U.S. at 476).

B.   <u>Analysis</u>

   1.   *Personal Jurisdiction over Rickert*

The Amended Complaint alleges that "Defendant[] Lisa Rickert and/or [JDD] d/b/a [ASU] "contract[s] with retailers in this District, earn[s] income, sell[s] ASI products, market[s], advertise[s], and impos[es] restrictions on local retailers/stockists in this District."  Am. Compl. at ¶ 17.  Defendants argue that the Court does not have personal jurisdiction over Rickert because the acts alleged in the Complaint are conducted in Rickert's capacity as a corporate officer of JDD and ASU.

The "fiduciary shield" doctrine prohibits courts from exercising personal jurisdiction over a nonresident individual based solely upon acts taken in his or her capacity as a corporate officer.  <u>Amerireach.com, LLC v. Walker</u>, 719 S.E.2d 489, 493 (Ga. 2011).  In <u>Amerireach.com</u>, the Georgia Supreme Court recently held that the fiduciary shield doctrine is inconsistent with Georgia law because the legislature did not intend to shield agents or fiduciaries that act on a corporation's behalf from the jurisdiction of Georgia's courts.  <u>Id.</u> at 494.  Jurisdiction over a corporate officer, however, "does not automatically follow from jurisdiction over the corporation."  <u>Id.</u> (citations omitted).  Although a corporate officer is not personally liable for a corporation's acts solely because he or she serves as an

12

officer of the corporation, personal participation in a transaction based in Georgia or a tort committed in Georgia is a sufficient basis for the Court to exercise personal jurisdiction over a corporate officer or agent.

Georgia Cash America, Inc. v. Greene, 734 S.E.2d 67, 76 (Ga. Ct. App. 2012).

Georgia courts have found that nonresident corporate officers "transact business" in Georgia under the long-arm statute when they personally negotiate the terms of an agreement within the State. Genesis Research Inst., Inc. v. Roxbury Press., Inc., 542 S.E.2d 637, 639 (Ga. Ct. App. 2000). A plaintiff's cause of action, however, must arise from the corporate officer's act of transacting business in Georgia. Smith v. Air Ambulance Network, Inc., 427 S.E.2d 305, 306 (Ga. Ct. App. 1993).

While the Amended Complaint alleges that Defendant "Rickert and/or [JDD] d/b/a [ASU] contracts with retailers" in Georgia and "impos[es] restrictions" on those retailers that sell ASI's products in Georgia, it does not allege any facts to support that Defendant Rickert personally participated in the negotiations or committed an intentional act in Georgia to show that she was a primary participant in the negotiations or the execution of the contracts. On its face, the Amended Complaint does not distinguish between the actions of Rickert or JDD and ASU. There are no facts in the Complaint that suggest Rickert

personally participated in a business transaction in Georgia.

The Court concludes that the Amended Complaint fails to allege facts to demonstrate that Rickert was "personally and intimately involved in drafting and negotiating the contracts" with retailers based in Georgia.  Georgia Cash America, Inc. v. Greene, 734 S.E.2d at 76.  In the absence of allegations that Rickert personally committed an intentional act in connection with transacting business in Georgia, there is no basis for the Court to exercise personal jurisdiction over Rickert in this action.  Id.; see also Culliford v. American Kiko Goat Ass'n, No. 2:10-cv-112-RWS, 2013 WL 3138971, at *4 (N.D. Ga. Aug. 1, 2012) (applying Amerireach.com to conclude that there was no personal jurisdiction over the corporate officer because the complaint failed to allege that the corporate officer had "purposefully done some act or consummated some transaction" in Georgia).

In its Response to the Motion to Dismiss, Plaintiff appears to suggest that the Court should apply the alter ego theory to find that personal jurisdiction can be exercised over Defendant Rickert.  Under Georgia law, "[t]o establish the alter ego doctrine it must be shown (1) that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; (2) that there is such unity of interest and ownership that the separate personalities of

14

the corporation and the owners no longer exist; and (3) to adhere to the doctrine of corporate entity would promote injustice or protect fraud." McLean v. Cont'l Wingate Co., 442 S.E.2d 276, 279 (1994) (quoting Custom Lighting & Decorating, Ltd. v. Hampshire Co., 418 S.E.2d 811, 814 (1992)).

To justify piercing the corporate veil, "'the plaintiff must show [that] the owner abused the corporate form by disregarding the separateness of legal entities by commingling [funds] on an interchangeable or joint basis or confusing the otherwise separate properties, records, or control.'" Rasheed v. Klopp Enters., Inc., 622 S.E.2d 442, 446 n. 4 (2005) (citation omitted).

The Amended Complaint fails to allege facts that would justify piercing the corporate veil in this case. The only argument that Plaintiff has presented, and which merits any discussion, is that "One website states that L. Rickert—not ASU or JDD—'now has an amazing team of Staffers and Retailers who inspire her every day as she unfolds Annie Sloan as a brand to be reckoned with.'" Pl.'s Resp. to Mot. to Dismiss at 5. A reference to a corporate officer in the first person, as opposed to the corporation, is insufficient to find that the corporate officer was acting outside the corporate form. See Hi Tech. Pharm., Inc. v. Demelo, No. 1:07-cv-1934, 2009 WL 901156, at *4 (N.D. Ga. Mar. 31, 2009).

The remaining allegations in Plaintiff's Response do not support the alter

ego theory.  For example, Plaintiff argues that ASU is the alter ego of Rickert because ASU is not registered to do business in Louisiana.  Louisiana law, however, permits a corporation to conduct business under an assumed name, and ASU is not required to register with the Secretary of State under Louisiana law. MAS Nursing, Inc. v. Burke, 523 So.2d 909, 912 (La. Ct. App. 1988).  The other "facts" alleged in the Amended Complaint are equally insufficient to support an alter ego theory, assuming Plaintiff can even rely on them.

The Court concludes that Plaintiff has failed to show a *prima facie* case that personal jurisdiction can be exercised over Defendant Rickert under Georgia's long-arm statute.  Because Plaintiff has failed to prove the existence of personal jurisdiction under Georgia's long-arm statute, the Court does not need to decide whether the exercise of jurisdiction, if it existed under the long-arm statute, which it does not, would be proper under the Due Process Clause. See LabMD v. Tiversa, Inc., 509 F. App'x 842, 846 (11th Cir. 2013); Henriquez v. El Pais Q'Hubocali.com, 500 F. App'x 824, 829 (11th Cir. 2012).[2]  The Defendants' Motion to Dismiss the Complaint against Rickert for lack of personal jurisdiction is granted.

---

[2] The Court notes that the allegations in the Amended Complaint facially fall well short of supporting a constitutional basis for exercising jurisdiction over Rickert.

2.   *Personal Jurisdiction over ASI*

The Amended Complaint states that ASI is subject to personal jurisdiction under Georgia's long-arm statute because "it transacts business, through [Rickert] and/or [JDD] d/b/a [ASU], with retailers in this District, and earns revenue and pays taxes on those goods sold in this District."  Am. Compl. at ¶ 16.  Defendants have submitted an affidavit from one of ASI's owners that asserts: (1) ASI does not own or lease any property in Georgia; (2) ASI does not have any employees or independent contractors working within the state of Georgia; (3) ASI does not have any contractual dealings with any retailers of the "CHALK PAINT®" brand in the United States, (4) ASI has not entered into any contracts with persons within Georgia, (5) ASI does not have control over which local retailers in a particular state conduct business with JDD; (6) ASI does not target any direct-mail advertising to Georgia residents; and (7) ASI's contract with JDD specifically disclaims any agency relationship between the two entities.  Manuel Aff. at ¶¶ 5-16.

The Manuel affidavit shifts the burden to the Plaintiff to demonstrate the existence of personal jurisdiction over ASI.  Plaintiff, however, has not contested the Manuel Affidavit, and Plaintiff has thus failed to rebut any of its assertions. The Amended Complaint and Plaintiff's Response to the Defendants' Motion to

17

Dismiss fails to acknowledge that the Eleventh Circuit requires the term "transact business" to be "interpreted literally," and requires the defendant to have "purposefully done some act or consummated some transaction in [Georgia] . . . " Diamond Crystal, 593 F.3d at 1259-61.  The Amended Complaint does not allege any facts to suggest that ASI transacted business in Georgia by "purposefully [doing] some act or consumma[ting] some transaction" in this State.  Id.

Plaintiff's arguments regarding why personal jurisdiction should be exercised over ASI are largely based on ASI's relationship with JDD, or on the fact that ASI delivered products into the stream of commerce that were ultimately sold in Georgia.  For instance, Plaintiff insists that JDD is merely acting on behalf of ASI as its agent because a document entitled "Retail Distribution Agreement" [RDA] states that retailers "must agree with ASI's values and business policies, which are non-negotiable.  Additionally, [ASU], [JDD], and the stockists agree to form an 'advertising cooperative' in which all parties agree to pool contributions to share the cost of advertising ASI's products in the U.S."  Pl.'s Resp. to Mot. to Dismiss at 8.

The RDA is an agreement "entered into by and between [JDD]" and the retailers.  See Pl.'s Ex. 106.  The Agreement, in its preamble, provides that it "shall not be effective unless and until it is signed and returned by the undersigned party

18

to [JDD], and it has been accepted and signed by [JDD]."  Id.  Plaintiff's

"evidence" is not relevant to determine whether there is an "agency" relationship

between ASI and JDD or ASU.  The documents submitted by Plaintiff, in fact,

bolster the Manuel affidavit because the RDA shows that ASI was not a party to an

agreement with a local retailer in Georgia or any other retailer in the United States.

ASI has an exclusive license with JDD to market and sell its products.  JDD, as the

exclusive licensee of ASI's products, enters into an RDA with retailers such as

CIUN.  The uncontested evidence presented by the Defendants shows that ASI

does not exercise control over JDD's relationship with CIUN or any other retailer

in the United States.  A distribution agreement between ASI and JDD does not

create an agency relationship.  Wolicki-Gables v. Arrow Int'l Inc., 641 F. Supp. 2d

1270, 1290 (M.D. Fla. 2009), aff'd, 634 F.3d 1296 (11th Cir. 2011).

Plaintiff next argues that the Court can exercise personal jurisdiction over

ASI because its founder, Annie Sloan, conducted a workshop on painting in

Georgia and autographed books for the audience.  A nonresident corporation is not

subject to personal jurisdiction simply because its founder entered Georgia in a

personal capacity.  Ace Investors, LLC v. Rubin, 494 F. App'x 856, 859 (10th Cir.

2012).  The long-arm statute "permits jurisdiction [only] where a plaintiff's cause

of action 'arises out of' a nonresident defendant's 'transact[ion] of any business

within [Georgia]." <u>Diamond Crystal.</u>, 593 F.3d at 1264.  Plaintiff has failed to allege that Annie Sloan's visit to Georgia has any relationship with its claims against the Defendants in this action—a required connection that needs to be established for the Court to exercise personal jurisdiction over ASI under the long-arm statute.  <u>Id.</u>

Plaintiff also asserts that the Court can exercise personal jurisdiction over ASI because its website provides a link to ASU's website, and when that link is accessed through ASI's website, consumers in Georgia can purchase ASI's products.  It is undisputed that ASI does not directly sell its products to people within Georgia through its website.  ASI merely advertises its products on its website, and directs viewers to visit its U.S. based distributor's website to purchase ASI's products.  The long-arm statute does not permit the Court to exercise personal jurisdiction over ASI based on the operation of a passive website that provides information about its distributor.  <u>See</u> <u>LabMD, Inc.</u>, 509 F. App'x at 845 (holding that Triversa's website does not subject it to personal jurisdiction under Georgia's long-arm statute because the website advertises Triversa's services, and does not directly sell any products to Georgia residents or target Georgia residents); <u>Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n</u>, 140 F. Supp. 2d 1325, 1330 (S.D. Fla. 2001) (finding that there is no personal

jurisdiction over the defendants because the State's residents "cannot contract with the Defendants through their website to make purchases."); see also Smith v. Air Ambulance Network, 427 S.E.2d 305 (Ga. Ct. App. 1993) ("[T]he mere placement of advertisements in Georgia would be insufficient to authorize the exercise of personal jurisdiction" under the long-arm statute).

The Court also concludes that the exercise of personal jurisdiction over ASI would not comport with the Due Process Clause.  This is a classic "stream of commerce" case that involves an upstream manufacturer that delivers its products through distributors and retailers in the United States, and the product ends up in the forum state to become the subject of a potential cause of action.  ASI licenses its products to JDD in the United States.  JDD does not conduct its business under the direction and guidance of ASI.  ASI "has no control over which local retailers in a particular state conduct business with [JDD]."  Manuel Aff. at ¶ 12.  These are the only facts that can be gleaned from the Amended Complaint to analyze whether the Court can exercise personal jurisdiction over ASI, and they are insufficient to confer specific jurisdiction under the Due Process Clause.

In J. McIntyre Machinery Ltd. v. Nicastro, a case instructive here, a plurality of the Supreme Court recently held that there was no personal jurisdiction over a foreign defendant based on a distribution agreement to sell the defendant's

products in the United States, official attendance by defendant at annual conventions to advertise its products, and the sale of four machines, including one that caused the plaintiff's injuries. —,U.S. —, 131 S.Ct. 2780, 2788 (2011).  The plurality found that these alleged contacts with the forum state did not establish that defendant "engaged in conduct purposefully directed at New Jersey" to confer specific jurisdiction under the Due Process Clause.  Id.; See also id. at 2792-2793 (Breyer, J., Alito, J., concurring) (disagreeing with the plurality's "seemingly strict no-jurisdictional approach," but concurring that the facts presented were insufficient to conclude that defendant "purposefully avail[ed]" itself of the privilege of conducting business in New Jersey).

ASI's minimum contacts with Georgia that are alleged in the Amended Complaint are even weaker than the minimum contacts alleged in Nicastro.  With the exception of ASI's distribution agreement with JDD, Plaintiff has not alleged any facts, such as the volume of ASI's sales in Georgia or direct advertising of ASI's products in Georgia, to suggest that ASI has purposefully availed itself of the benefit of Georgia's laws.  The exercise of personal jurisdiction over ASI soley because ASI has an exclusive distribution agreement with a Louisiana citizen that contracts with entities in Georgia to sell ASI's products would violate the Due Process Clause.  Id. at 2788.  The Court concludes that it has no personal

jurisdiction over ASI under Georgia's long-arm statute or under the Due Process Clause.  The Defendants' Motion to Dismiss the Complaint against ASI for lack of personal jurisdiction is granted.

      C.      <u>Analysis of Plaintiff's Federal Claims</u>

           *1.*     *Legal Standard*

The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-settled.  Dismissal of a complaint is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  <u>Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993).

In considering a motion to dismiss, the Court accepts the plaintiff's allegations as true and considers the allegations in the complaint in the light most favorable to the plaintiff.  <u>See</u> <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1295 (11th Cir. 2007); <u>see also</u> <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").  The Court, however, is not required to accept a plaintiff's legal conclusions.  <u>See</u> <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260

(11th Cir. 2009) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)), <u>abrogated on other grounds by</u> <u>Mohamad v. Palestinian Auth.</u>, 132 S. Ct. 1702 (2012).  The Court also will not "accept as true a legal conclusion couched as a factual allegation."  <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 570.[3]

To state a claim for relief that is plausible, the plaintiff must plead factual content that "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.  "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 557).  "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."

---

[3] The Supreme Court explicitly rejected its earlier formulation for the Rule 12(b)(6) pleading standard: "'[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  <u>Twombly</u>, 550 U.S. at 577 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  The Court decided that "this famous observation has earned its retirement."  <u>Id.</u> at 563.

<u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1263 (11th Cir. 2004)

("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions

masquerading as facts will not prevent dismissal.") (citations omitted).[4]

###### 2.    *Declaratory Judgment*

Plaintiff seeks a declaration that "CHALK PAINT®" is merely a

descriptive, generic term, and is thus not inherently distinctive, allowing it to be

protected under federal trademark law.  This argument is principally based on

Plaintiff's opinion that "CHALK PAINT®" "is the generic name for paint that

includes chalk as an ingredient and/or that dries to a flat, chalky finish."  Am.

Compl. at ¶ 34.  Plaintiff further argues that "CHALK PAINT®" is a term of art in

the arts and crafts industry "that also describes a paint commonly made from

limestone, or similar natural substances and that dries to a flat, chalky finish."  <u>Id.</u>

at ¶ 35.  These conclusory claims are not supported by any facts, and the bases for

the conclusory opinions are not alleged in the Amended Complaint.

Under Section 7(b) of the Lanham Act, a certificate of registration issued by

---

[4]  Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In <u>Twombly</u>, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  <u>Twombly</u>, 550 U.S. at 555.

the USPTO is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce or in connection with the goods and services specified in the certificate."  15 U.S.C. § 1057(b).  A registered trademark is strongly presumed to be valid. Coach House Rest., Inc. v. Coach and Six Rest., Inc., 934 F.2d 1551, 1562 (11th Cir. 1991).

There is no dispute that ASI has obtained two trademark registrations from the USPTO for the "CHALK PAINT®" brand.  Registration of the mark provides the Defendants with a "presumption that the mark is not merely descriptive or generic, or, if merely descriptive, is accorded secondary meaning.  This presumption may, of course, be overcome by proof of descriptiveness, or by proof of genericness."  Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d 934, 935 (7th Cir.1986).

Plaintiff contends that it has offered sufficient proof that the "CHALK PAINT®" mark is generic because the USPTO initially rejected ASI's application because it found the term to be "merely descriptive."  This fact is not relevant because the applications to register "CHALK PAINT®" in standard character and stylized forms were ultimately approved by the USPTO.

See Ellington v. Gibson Piano Ventures, Inc., 103CV0804WTLDFH, 2005 WL 1661729, at *6 (S.D. Ind. June 24, 2005) (finding that plaintiff's reference to the initial decisions of the USPTO is not relevant because the examiner considered additional evidence and approved the application to register the mark).

Even if the Court assumes that "CHALK PAINT" is a generic term that merely describes the nature and ingredients of paint products, the Plaintiff acknowledges that ASI's application was approved based on the claim that ASI's "use in commerce of the CHALK PAINT mark has been substantially exclusive and continuous" to constitute "acquired distinctiveness" in the paint industry. Resp. to Mot. to Dismiss at 10 (referencing ASI's Section 2(f) Declaration filed in connection with the successful registration of the "CHALK PAINT®" mark).  In other words, Plaintiff acknowledges that ASI's claim to the "CHALK PAINT®" mark is based on acquired distinctiveness, "by becoming associated in the minds of the public with the products and services offered by the proprietor of the mark . . ."[5] Welding Serv. Inc. v. Forman, 520 F.3d 1351, 1357 (11th Cir. 2007).

---

[5] "A descriptive name . . . though not inherently distinctive, can acquire distinctiveness or 'secondary meaning' by becoming associated with the proprietor's product or service.  A name has acquired secondary meaning when the primary significance of the term in the minds of the [consuming] public is not the product but the producer."  Welding Serv. Inc., 520 F.3d at 1358 (internal citations and quotation marks omitted) (brackets in original).

The Amended Complaint fails to allege facts to support that "CHALK PAINT®" has not acquired distinctiveness by becoming associated with ASI's brand name or products.  "Whether a name has attained secondary meaning depends on the length and nature of the name's use, the nature and extent of advertising and promotion of the name, the efforts of the proprietor to promote a conscious connection between the name and the business, and the degree of actual recognition by the public that the name designates the proprietor's product or service."  Id. at 1358.  The Amended Complaint does not address any of these factors to show that ASI's registered marks have not acquired a secondary meaning to be protected under federal law.  The Plaintiff's request for a declaratory judgment that the "CHALK PAINT®" mark is invalid and unenforceable is thus required to be dismissed.  The Defendants' Motion to Dismiss Count I of the Amended Complaint is granted.

### 3.   *Fraud Claims*

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  See Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), a complaint claiming fraud must set forth "(1) precisely what statements were made

in what documents or oral representations or what omissions were made, and (2)

the time and place of each such statement and the person responsible for making

(or, in the case of omissions, not making) same, and (3) the content of such

statements and the manner in which they misled the plaintiff, and (4) what the

defendants obtained as a consequence of the fraud." Brooks v. Blue Cross & Blue

Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir.1997) (internal quotation marks

omitted).

The particularity requirement "serves an important purpose in fraud actions

by alerting defendants to the precise misconduct with which they are charged and

protecting defendants against spurious charges of immoral and fraudulent

behavior." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)

(internal quotation marks omitted).

Under 15 U.S.C. §1120, any person who registers a trademark "by a false

statement or fraudulent declaration or representation" may be liable in a civil

action. 15 U.S.C. §1120. Under 15 U.S.C. §1064(3), a party may petition to

cancel a registered trademark if the "registration was obtained fraudulently." 15

U.S.C. §1064(3). "Fraud occurs when an applicant knowingly makes false,

material representations of fact in connection with an application for a registered

mark." Angel Flight of Georgia, Inc. v. Angel Flight American, Inc., 522 F.3d

29

1200, 1209 (11th Cir. 2008).

To establish a prima facie case of fraud, a party must show that: (1) the challenged statement was a false representation regarding a material fact; (2) the registrant knew the representation was false; (3) the registrant intended to deceive the USPTO; (4) the USPTO reasonably relied on the misrepresentation; and (5) the party suffered damages proximately resulting from such reliance. San Juan Products, Inc. v. San Juan Pools of Kansas, Inc., 849 F.2d 468, 473 (10th Cir.1988). "There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." In re Bose Corp., 580 F.3d 1240, 1244 (Fed. Cir. 2009) (citations omitted). "[A]bsent the requisite intent to mislead the PTO, even a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation." Id.

Plaintiff argues that "upon information and belief, ASI knew that the term chalk paint had a significance and was a term of art in the paint industry when ASI filed its June 26, 2012 response to the USPTO's December 27, 2011 office action." Am. Compl. at ¶ 52. This conclusory claim is based on conjecture and speculation. The Amended Complaint does not allege any facts to show that "chalk paint" was a "term of art" in the paint industry, and it does not allege any facts to suggest that ASI knew that "chalk paint" was a "term of art."

The Amended Complaint further asserts that "the evidence will show that ASI knew that its products containing the mark, 'alone' were not 'exclusive[ly] and continuous[ly] use[d] in commerce for at least five years immediately before the date . . .' of its Section 2(f) Declaration."  Am. Compl. at ¶ 53.  In other words, Plaintiff expects (or maybe hopes) that it will uncover evidence of fraud during discovery, but acknowledges that it currently does not have any evidence that ASI made a fraudulent representation to the USPTO.  This is precisely the type of litigation behavior that Rule 9(b) was designed to prevent.  Brooks, 116 F.3d at 1371.

The Amended Complaint fails to allege that ASI knowingly made a material misrepresentation in connection with the registration of the "CHALK PAINT®" mark.  It also fails to allege any facts that ASI intended to deceive the USPTO.  Plaintiff's fraud claim further fails to comply with the requirements of specificity and particularity demanded by Rule 9(b) of the Federal Rules of Civil Procedure.

In its Response to the Motion to Dismiss, Plaintiff, for the first time, raises additional arguments to support its fraud claims. These arguments are not based on facts alleged in the Amended Complaint.  The arguments raised in the Plaintiff's Response are not relevant to the current dispute, and even if they were relevant, they are not properly before the Court and the Court will not consider them.

See Huls v. Liabona, 437 F. App'x 830, 832 n.4 (11th Cir. 2011) (per curium) (argument not properly raised where plaintiff asserted it for the first time in response to defendant's motion to dismiss, instead of seeking leave to file an amended complaint); Jiles v. PNC Bank Nat. Ass'n, No. 5:10-cv-180-CAR, 2012 WL 3241927, at *5 (M.D. Ga. Aug. 7, 2012) (court not required to consider new allegation raised for the first time in response to defendant's motion to dismiss and not raised in complaint or amended complaint); cf. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

The Defendants' Motion to Dismiss Plaintiff's fraud claims is granted, and Count II and III of the Amended Complaint are dismissed.

4. *Lanham Act Claim for Trademark Infringement*

Section 43(a) of the Lanham Act prohibits unfair trade practices involving infringement of trade dress, service marks, or trademarks, even if the mark has not been registered.[6] Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1194 (11th Cir. 2001) (citations omitted).  To state a claim under this section, the plaintiff must show that (1) it had prior rights to the mark at issue and (2) the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.  Id.

---

[6] Section 43(a) provides that "[any] person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Regarding the second element, the Eleventh Circuit considers seven factors in assessing whether or not the "likelihood of confusion" exists: "(1) the type of mark (in short, whether the 'relationship between the name and the service or good it describes' is such that the chosen name qualifies as generic, descriptive, suggestive, or arbitrary); (2) the similarity of the marks (based on 'the overall impressions that the marks create, including the sound, appearance, and manner in which they are used'); (3) the similarity of the goods ('whether the products are the kind that the public attributes to a single source'); (4) the similarity of the parties' retail outlets, trade channels, and customers ('consider[ing] where, how, and to whom the parties' products are sold'); (5) the similarity of advertising media (examining 'each party's method of advertising' to determine 'whether there is likely to be significant enough overlap' in the respective target audiences such 'that a possibility of confusion could result'); (6) the defendant's intent (determining whether the defendant had a 'conscious intent to capitalize on [the plaintiff's] business reputation,' was 'intentionally blind,' or otherwise manifested 'improper intent'); and (7) actual confusion (that is, whether there is evidence that consumers were actually confused)."

Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 648 (11th Cir. 2007) (quoting Frehling Enters., Inc. v. Int'l Select Group, Inc., 192 F.3d 1330,

1335–41 (11th Cir.1999)).

The Amended Complaint fails to allege that Plaintiff adopted the "CHALK PAINT®" mark before ASI's use of the mark in connection with the marketing and sale of its paint additive powder.  The Amended Complaint acknowledges that ASI has used the term "CHALK PAINT®" from at least October 2003," but it does not specify when or how Plaintiff adopted the use of "CHALK PAINT®" to market and sell its products.  Plaintiff alleges that ASI authorized the use of ASI's new logo in April, 2013, implying that Plaintiff's logo was created before April, 2013.  Plaintiff, however, does not specify in its Amended Complaint when it created the "WEBSTERS CHALK PAINT POWDER" logo.[7]

To the extent Plaintiff claims it was entitled to place an ordinary geometric shape in its logo before ASI adopted its new logo in April, 2013, "circles, ovals, squares etc., even when not used as background for other marks, are regarded as nondistinctive and protectable only upon proof of secondary meaning." Wiley v. American Greetings Corp., 762 F.2d 139, 142 (1st Cir. 1985).  The Amended Complaint fails to allege that the circle contained in Plaintiff's logo has acquired a secondary meaning, "by becoming associated in the minds of the public with the products and services offered by the proprietor of the mark . . . "

---

[7] A comparison of Plaintiff's and ASI's logos can be found on page 4 of this Order.

Welding Serv. Inc., 520 F.3d at 1357.

Plaintiff has failed to allege that the geometric shape of its logo is protectable because it acquired a secondary meaning, and the Amended Complaint does not allege facts that suggest Plaintiff had prior rights to the "CHALK PAINT®" mark.  The Complaint also fails to address any of the seven factors identified by the Eleventh Circuit to determine whether ASI's registered mark is confusingly similar to plaintiff's claimed mark.  The Defendants' Motion to Dismiss Plaintiff's Lanham Act claim for trademark infringement is granted.[8]

---

[8] The Court has dismissed all claims over which it had original jurisdiction.  The Court has discretion to decline to exercise jurisdiction over Plaintiff's state law claims for the tortious interference with business relations, and claims based on O.C.G.A. § 10-1372(a) for deceptive trade practices and disparagement of goods. See Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 744 (11th Cir. 2006) (explaining that a "federal court will find substantial predominance when it appears that a state claim constitutes the real body of a case" (internal quotation omitted)); Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1123 (11th Cir. 2005) (explaining that when "no basis for original federal jurisdiction presently exists, the district court has the discretion to decline to exercise supplemental jurisdiction").  Because the Court has dismissed Plaintiff's claims based on federal law, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and the state law claims are dismissed without prejudice.  See Ingram v. School Bd. of Miami-Dade County, 167 F. App'x 107, 108 (11th Cir. 2006) (holding that if the federal claims are dismissed prior to trial, dismissal of state law claims is appropriate and strongly encouraged, but the dismissal should be without prejudice.).

### 5. Motion to Strike

On December 3, 2013, Plaintiff moved to strike the Defendants' Reply to its Response to the Motion to Dismiss.  Plaintiff argues that the Reply was untimely under Local Rule 7.1C because it was not filed within fourteen (14) days after service of Plaintiff's Response to the Motion to Dismiss.  See LR 7.1(C), NDGa. On November 14, 2013, Plaintiff filed its Response to the Motion to Dismiss.  On December 2, 2013, Defendants filed their Reply to Plaintiff's Response.

Rule 6(d) of the Federal Rules of Civil Procedure provides a party with an additional three days to respond when electronic service is made.  See Fed. R. Civ. P. 6(d).  Defendants' Reply was due seventeen (17) days after November 14, 2013, or on December 1, 2013.  Because December 1, 2013, was a Sunday, Defendants' Reply was due on Monday, December 2, 2013.[9]  Plaintiff's Motion to Strike is denied because Defendants filed their Reply on the required date under the Court's Local Rules and the Federal Rules of Civil Procedure.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

---

[9] Under Rule 6(a)(3)(A) of the Federal Rules of Civil Procedure, the required time for filing is extended to the first accessible day after a Saturday, Sunday, or a legal holiday, if the last day of the period falls on those days.  See Fed. R. Civ. P. 6(a)(3)(A).

**IT IS HEREBY ORDERED** that the Defendants' Motion to Dismiss the

Complaint is **GRANTED** [21].[10]

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Strike the

Defendants' Reply as Untimely is **DENIED** [24].

**SO ORDERED** this 18th day of August 2014.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[10] The Court notes that, although Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires," leave to amend the Complaint may be denied because of the plaintiff's "repeated failure to cure deficiencies by amendments previously allowed." See Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc., 556 F.3d 1232, 1241 (11th Cir. 2009) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). In this case, Plaintiff's failure to fully cure earlier pleading deficiencies in its Amended Complaint, and the considerable delay in processing of this case, would warrant the denial of leave to file a Second Amended Complaint. See United States ex rel. Fowler v. Caremark Rx, L.L.C., 496 F.3d 730, 740 (7th Cir. 2007) ("Despite the fact that the deficiencies could be cured through an appropriate pleading, a district court properly exercises its discretion in dismissing the case when the plaintiff continually fails to provide a valid pleading in compliance with the federal rules."), overruled on other grounds by Glaser v. Wound Care Consultants, Inc., 570 F.3d 907 (7th Cir. 2009).